**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| FIDELITY AND DEPOSIT COMPANY OF MARYLAND, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | )   Case No. 4:21-cv-1074- JAR ) |
| JEFF BLANTON, et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Midwest Asbestos Abatement Corporation, Blanton Holdings, LLC, Coastline Construction Services, LLC, and CenMech, LLC's ("Defendants") Motion to Compel (ECF No. 61). Plaintiff Fidelity Deposit Company of Maryland ("Fidelity" or "Plaintiff") filed an opposition on January 25, 2023. (ECF No. 69). Defendants filed a reply memorandum on February 6, 2023 (ECF No. 70). This matter is now fully briefed and ready for disposition. For the reasons stated herein, the Court denies Defendants' Motion to Compel.

**A. Background**

On or around June 1, 2006, Defendant Jeff Blanton, Defendant Joey L. Blanton, Defendant Midwest Asbestos Abatement Corporation, Defendant Blanton Holding, LLC, Defendant Coastline Construction Services, LLC, and Defendant Cenmech, LLC (collectively, "Indemnitors") executed an Agreement of Indemnity ("Indemnity Agreement"; ECF No. 1-1) in favor of Zurich American Insurance Company and its subsidiaries and affiliates, including but not limited to Fidelity.

The Indemnity Agreement provides, in part:

1

INDEMNITY

SECOND: The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interests, court costs and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. Such payment shall be equal to the amount of the reserve set by the Surety. In the event of any payment by the Surety the Contractor, and Indemnitors further agree that in an accounting between the Surety and Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.

\* \* \*

(Complaint ("Comp."), ECF No. 1, ¶ 12).

In reliance on the Indemnity Agreement, Fidelity, as Surety, issued a Performance Bond (No. 9183624; ECF No. 1-2) and a Payment Bond (No. 9183624; ECF No. 1-3), as well as various permit and licensing bonds on behalf of Ben F. Blanton Construction, Inc. ("Blanton Construction") and Midwest Asbestos. (Compl., ¶ 13). The Court generally refers to the Performance Bond and the Payment Bond as "the Bonds".

BCC Partners, LLC ("BCC"), the obligee on the Performance Bond, alleged Blanton Construction defaulted on its performance obligations and that the obligations fell within Fidelity's obligations under the Performance Bond. (Compl., ¶ 14). BCC filed a lawsuit, *BCC Partners, LLC v. Fidelity and Deposit Company of Maryland*, No. 4:20-cv-1497-SEP (E.D. Mo.), seeking

the full $24,461,157.50 penal sum of the Performance Bond. (Compl., ¶ 15). Likewise, Fidelity is a defendant in two lawsuits pursuant to the Payment Bond: *Finch Plumbing Company v. Fidelity and Deposit Company of Maryland*, Case No. 19SL-CC01912 (Circuit Court of St. Louis County, Missouri) and *Owners Insurance Company and Stark Truss Company, Inc. v. Fidelity Deposit Company of Maryland,* Case No. 4:21-CV-184-JAR. At the time of the filing of the instant lawsuit, Fidelity had made payments of at least $1,804,551.21 to resolve claims on the Payment Bond, and anticipated more payments to be incurred, as well as attorneys' fees and interest. (Compl., ¶¶ 21-23).

Fidelity demanded indemnification from the Indemnitors for its losses and expenses incurred, but Indemnitors have not made any payments to Fidelity. (Compl., ¶¶ 24-25). Specifically, on September 3, 2020, Fidelity demanded that Indemnitors provide cash or collateral equal to $975,000.00, pursuant to the Indemnity Agreement. (Compl., ¶ 26). Indemnitors did not provide any cash or collateral. (Compl., ¶ 27).

On August 30, 2021, Fidelity filed this action against Indemnitors. (ECF No. 1). The Complaint alleges claims for Breach of Written Indemnity Agreement (Count I), Specific Performance of Obligations under the Written Indemnity Agreement (Count II), and Quia Timet (Count III). On October 22, 2021, Defendants filed their Answer and Affirmative Defenses (ECF No. 27). Their Affirmative Defenses included lack of consideration and the doctrine of unclean hands, laches, waiver and/or estoppel, among others.

On October 31, 2022, Fidelity filed a Motion for Summary Judgment on Count I of the Complaint. (ECF No. 45). On January 11, 2023, Defendants filed this Motion to Compel, seeking production of documents related to the underwriting and due diligence Fidelity conducted on Indemnitors prior to entering into the Indemnification Agreement and the Bonds. (ECF No. 61, ¶

3

5). Specifically, Defendants ask the Court to order Fidelity to withdraw its objections and respond to Interrogatories 4, 5, 6, 12, 13, 14, 15, 16, and 17, and Requests for Production 8, 9, 10, 14, and 15. Defendants claim that the underwriting file is relevant to their defenses of lack of consideration, unclean hands, laches, waiver, and estoppel.  (ECF No. 61, ¶ 7).

### B.  Standard of Review

Generally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery. "'A district court has very wide discretion in handling pretrial discovery and [the Eighth Circuit] is most unlikely to fault its judgment unless, in the totality of the circumstances, its rulings are seen to be a gross abuse of discretion resulting in fundamental unfairness in the trial of the case.'" *Rowles v. Curators of Univ. of Missouri*, 983 F.3d 345, 353 (8th Cir. 2020) (quoting *United States v. One Assortment of 93 NFA Regulated Weapons*, 897 F.3d 961, 966 (8th Cir. 2018)).

### C.  Discussion

Defendants primarily argue that the underwriting and due diligence documents are relevant to their lack of consideration defense.  They claim that "[t]his defense is based on Defendants' belief that Plaintiff did not conduct any reasonable inquiry into any Defendants' ability to pay or financial resources and therefore Plaintiff did not rely on the financial condition of each Defendant

4

in determining whether to issue the bonds." (ECF No. 62 at 4). Defendants also claim that they did not "obtain the benefit of the bonds issued in 2015." (*Id*.) Defendants assert that they "raised defenses of laches, waiver, and estoppel, which are based on the same factual predicates that underlie the lack of consideration defense." (*Id*.) Further, Defendants claim that the Court should not be guided by Fidelity's argument that Indemnitor's lack of consideration argument will fail, but should allow discovery to proceed on any relevant claim or defense pleaded. (ECF No. 62 at 3-4 (citing *A.O.A. v. Rennert*, No. 4:11 CV 44 CDP, 2017 WL 5478409, at *4 (E.D. Mo. Nov. 15, 2017) ("I am guided by Fed. R. Civ. P. 26(b)(1) and not on whether any party will prevail on their claims or defenses in this action.")).

In response, Fidelity contends that Defendants did not timely or diligently pursue their Motion to Compel. (ECF No. 69 at 4). Fidelity notes that discovery closed four months ago, and the parties are currently briefing Fidelity's summary judgment motion. In addition, Fidelity claims that the underwriting file is not relevant to Defendants' lack of consideration defense. (ECF No. 69 at 5-9)

The Court denies Defendants' Motion to Compel. The Court agrees that Defendants have not diligently pursued relief, given that discovery has been closed for several months. Moreover, the Court finds that Defendants have not shown how the requested relief is relevant to their defenses. Although Defendants argue that their requested discovery is necessary to determine whether there was "consideration for the Indemnification Agreement" (ECF No 61, ¶ 2), that information is irrelevant to Fidelity's claim in this lawsuit. Defendants have not shown that the Court can consider the underwriting documents as they relate Defendants' lack of consideration defense. *See Union Elec. Co. v. Sw. Bell Tel. L.P.*, 378 F.3d 781, 786 (8th Cir. 2004) (citing *Schaefer v. Spider Staging Corp.,* 275 F.3d 735, 739 (8th Cir. 2002) (applying Missouri law)

5

("[A]n indemnity agreement is enforceable if the agreement is clear and unequivocal, the provision applies to the claim in question, and the agreement was not signed under duress."). Here, the Indemnity Agreement states that the issuance of the bonds is the consideration for the Indemnity Agreement. Defendants have provided no basis for the Court to look outside this contract term to determine whether the Bonds do not constitute consideration. *See Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 461 (8th Cir. 2002) (citing *CIT Group/Sales Fin., Inc. v. Lark,* 906 S.W.2d 865 (Mo. Ct. App. 1995)) ("Missouri contract law provides an exception to the parol evidence rule that allows parties to introduce extrinsic evidence to rebut recitations of consideration if the recitation is a 'mere recitation' of fact, such as the acknowledgment of payment received, and is not a part of the terms of the contract itself."). Under the foregoing, the Court finds no support for allowing continued discovery, particularly at this belated stage of litigation and because Defendants have already responded to Fidelity's Motion for Summary Judgment.

Further, the Court holds that the requested discovery is not relevant to this litigation because the execution of the Bonds is sufficient consideration for the execution of the Indemnity Agreement under Missouri law. *See Am. Ins. Co. v. Gilbert*, 319 F. Supp. 1315, 1317–18 (E.D. Mo. 1970) (citing *James W. Scudder & Co. v. Morris*, 107 Mo. App. 634, 82 S.W. 217 (S.L.C.A.1904)). The Indemnity Agreement specifically provides, "the Indemnitors have a substantial, material and beneficial interest in the obtaining of the Bonds …" (ECF No. 69-1 at 1). Thus, the Court finds that the existence of consideration was "contemplated and expressly written in the contract[.]" *Am. Contractors Indem. Co. v. Leadco, LLC*, No. 4:11-CV-2126 CAS, 2014 WL 1272771, at *7 (E.D. Mo. Mar. 27, 2014).

Defendants cite to only one case to support their claim that a lack of reliance on one of multiple indemnitors for a bond can be an effective defense to an action on an indemnity

6

agreement.  (ECF No. 70 at 6-7) (citing *United Excavating Co. v. Hartford Accident & Indemnity Co.*, No. 78 CA 19, 1978 WL 215029 (Ohio Ct. App. July 6, 1978)).  In that out-of-circuit case, the Ohio Court of Appeals affirmed the trial court's verdict finding no liability of the wife-indemnitor where the surety only relied upon the financial information of the husband and corporate indemnitors.  *Id*. at *4.  In addition to having no precedential authority in this case, *United Excavating* is distinguishable because the Ohio Court found that indemnity agreement at issue terminated after a reasonable time.  *Id*. at 1-3.  Further, that case involved the liability of a wife indemnitor, who seemingly had no relationship to the transaction, and this case which involves sophisticated business entities, who acknowledged the Bonds as consideration for the Indemnity Agreement. The Court holds that discovery related to the lack of consideration defense is not reasonably calculated to lead to admissible evidence.  The Court denies Defendants' Motion to Compel.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Midwest Asbestos Abatement Corporation, Blanton Holdings, LLC, Coastline Construction Services, LLC, and CenMech, LLC's Motion to Compel (ECF No. 61) is **DENIED**.

Dated this 8th day of February, 2023.

                                                     **JOHN A. ROSS**
                                                   **UNITED STATES DISTRICT JUDGE**