**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FIDELITY AND DEPOSIT COMPANY OF MARYLAND, | ) ) ) | |
| Plaintiff, | ) ) | No. 4:21-CV-1074 JAR |
| v. | ) ) | |
| JEFF BLANTON, et al, | ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Fidelity and Deposit Company of Maryland's ("Fidelity") Motion for Summary Judgment. on Count I of its Complaint (ECF No. 45). This matter is fully briefed and ready for disposition. For the reasons stated herein, the Court grants Fidelity's Motion for Summary Judgment on Count I of its Complaint.[1]

## BACKGROUND

This case involves the issuance of bonds related to the construction of the Vue in Creve Coeur, Missouri.[2]

On or about June 1, 2006, Defendants Jeff Blanton, Jody L. Blanton, Midwest Asbestos Abatement Corporation, Blanton Holding, LLC, Coastline Construction Services, LLC, and CenMech, LLC (collectively, "Indemnitors") executed an Agreement of Indemnity (hereinafter "Indemnity Agreement", ECF No. 46-2) in favor of Zurich American Insurance Company and its subsidiaries and affiliates, including but not limited to Fidelity, with respect to construction surety bonds issued on behalf of Ben F. Blanton Construction, Inc. ("Blanton Construction").

---

[1] Fidelity also alleged claims for Specific Performance of Obligations Under the Written Indemnity Agreement (Count II) and Quia Timet (Count III).
[2] https://www.cthevue.com/ (last visited 4/17/2023).

(Plaintiff's Statement of Uncontroverted Material Facts ("PSUMF"), ECF No. 46, ¶ 1).[3]    In

Paragraph SECOND of the Indemnity Agreement, the Indemnitors agreed to indemnify Fidelity

for losses and/or expenses that Fidelity might incur because of issuing the bonds on behalf of

Blanton Construction:

INDEMNITY

> SECOND: The Contractor and Indemnitors shall exonerate, indemnify, and keep
> indemnified the Surety from and against any and all liability for losses and/or
> expenses of whatsoever kind or nature (including, but not limited to, interests,
> court costs and counsel fees) and from and against any and all such losses and/or
> expenses which the Surety may sustain and incur; (1) By reason of the failure to
> the Contractor or Indemnitors to perform or comply with the covenants and
> conditions of this Agreement or (3) In enforcing any of the covenants and
> conditions of this Agreement . . . .

(ECF No. 46-2; PSUMF, ¶ 2).  In Paragraph SECOND, Indemnitors agreed that Fidelity could

recover all disbursements made in good faith:

> In the event of any payment by the Surety the Contractor and Indemnitors further
> agree that in an accounting between the Surety and Contractor, or between the
> Surety and the Indemnitors, or either or both of them, the Surety shall be entitled
> to charge for any and all disbursements made by it in good faith in and about the
> matters herein contemplated by this Agreement under the belief that it is or was
> liable for the sums and amounts so disbursed, or that it was necessary or
> expedient to make such disbursements, whether or not such liability, necessity or
> expediency existed; . . .

(ECF No. 46-2; PSUMF, ¶ 3).  Paragraph SECOND further agreed that vouchers or evidence of

Fidelity's payment would constitute prima facie evidence of the amount Indemnitors would be

liable to Fidelity.  The Indemnity Agreement provides that "the vouchers or other evidence of

any such payments made by the Surety shall be prima facie evidence of the fact and amount of

---

[3] Blanton Construction also executed the Indemnity Agreement and is identified as Contractor
and Indemnitor in the Indemnity Agreement, but it is not a defendant in this action because it
filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code.  (ECF
No. 46 at 1, n.1); *see also In re Ben R. Blanton Construction Inc.*, No. 20-43555, Doc. 1 (Bankr.
E.D. Mo.).

the liability to the Surety."  (ECF No. 46-2; PSUMF, ¶ 4).  The Indemnity Agreement also gives

Fidelity the right to settle any claim or demand, unless the Indemnitors request that Fidelity

litigate such claim and deposit the cash or collateral that Fidelity requires:

> THIRTEENTH: The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Contractor and the Indemnitors shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall depot with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.

(ECF No. 46-2; PSUMF, ¶ 5).

Thereafter and in reliance on the Indemnity Agreement, Fidelity issued performance and

payment bonds, as well as various permit and licensing bonds on behalf of Blanton Construction.

(PSUMF, ¶ 6).  On or about June 25, 2015, Fidelity issued Performance Bond No. 9183624

("Performance Bond") in the penal sum of $24,461,157.50 with BCC Partners, LLC ("BCC") as

the Obligee, and Blanton Construction, as Principal for the project ("the Project"), commonly

referred to as "The Vue," located at 10545 Old Olive Road, Creve Coeur, Missouri. (PSUMF, ¶

7).  On the same date, Fidelity issued Labor and Material Payment Bond No. 9183624 ("Payment

Bond") in the penal sum of $24,461,157.50, with BCC as the Obligee and Blanton Construction

was the principal for the Project. (PSUMF, ¶ 8).  The Performance Bond and Payment Bond are

referred to collectively as the "Bonds."

After issues on the Project arose, Blanton Construction and BCC submitted their claims

to a two-part arbitration.  Phase 1 claims included all claims not in Phase 2; Phase 2 addressed

structural claims, specifically "Non-balcony framing deficiencies and Non-corrected framing

deficiencies."  (PSUMF, ¶ 15).  After a hearing on Phase 1, BCC was awarded $7,800,780.23,

plus interest, and $201,039.97 in arbitration costs, fees, and expenses against Blanton

Construction.  (PSUMF, ¶ 18). On July 16, 2020, Blanton Construction filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.  (PSUMF, ¶ 34).

After arbitration of the Phase 1 claims, BCC demanded the full penal sum of the Performance Bond from Fidelity, with BCC ultimately filing suit against Fidelity. (PSUMF, ¶¶ 19-26); *see BCC Partners, LLC v. Fidelity and Deposit Company of Maryland*, 4:20CV01497. Fidelity and BCC settled their disputes, with Fidelity paying $22,800,000 and paying investigation costs to BCC and its affiliates in the amount of $335,079.89.  (PSUMF, ¶¶ 30-35).

In addition to the Performance Bond claim, several subcontractors made claims on the Payment Bond.  Fidelity hired attorneys and consultants to assist in investigating and defending against claims made by BCC and the subcontractors on the Bonds.  Fidelity incurred attorneys' fees, costs and expenses, which continue to accrue.  Fidelity ultimately paid $2,055,827.63 to subcontractors and $2,950.00 in attorneys' fees incurred to defend BCC in a mechanics lien claim filed by a subcontractor.  (PSUMF, ¶¶ 38-42).

On August 30, 2021, Fidelity filed a Complaint against Indemnitors. (ECF No. 1). Fidelity's Motion for Summary Judgment is as to Count I for Breach of Written Indemnity Agreement.  In total, Fidelity seeks $25,708,623.39, pus pre-judgment interest from the date of each payment.[4]  (ECF No. 47 at 12)

## STANDARD OF REVIEW

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986);

---

[4] Under Paragraph FIFTEENTH of the Indemnity Agreement, Fidelity may bring a separate suit to recover any additional losses and expenses it incurs.

- 4 -

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).   The substantive law determines which facts are critical and which are irrelevant.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   Only disputes over facts that might affect the outcome will properly preclude summary judgment.   *Id.*   Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.   *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323.   Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute."   Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248.   The nonmoving party may not rest upon mere allegations or denials of his pleading.   *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331.   The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial.   *Anderson*, 477 U.S. at 249.

## DISCUSSION

"Because this is a diversity case, the Court applies state substantive law and federal procedural law." *Russo v. Frasure*, 371 F. Supp. 3d 586, 589 (E.D. Mo. 2018) (citing *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see also Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938).   "Because the Court sits in diversity, Missouri law governs."   *Id.* (citing *Burger v. Allied Prop. & Cas. Ins. Co.*, 822 F.3d 445, 447 (8th Cir. 2016)).   "Under Missouri law, the rules applicable to the construction of contracts also apply to indemnity agreements." *Nat'l Sur. Corp. v. Prairieland Const. Inc.*, 354 F. Supp. 2d 1032, 1037 (E.D. Mo. 2004) (citing *Chehval v.*

*St. John's Mercy Medical Center,* 958 S.W.2d 36, 38 (Mo. Ct. App. 1997)).  To succeed on a claim for breach of contract in Missouri, Fidelity must establish: (1) the existence of a valid contract; (2) the rights and obligations of the respective parties; (3) a breach; and (4) damages. *Nat'l Sur. Corp.*, 354 F. Supp. 2d at 1039 (citing *Rhodes Engineering, Inc. v. Public Water Supply District No. 1,* 128 S.W.3d 550, 560 (Mo. Ct. App. 2004)).

Here, Fidelity asks the Court to grant summary judgment in its favor in the amount of $25,708,623.39, which constitutes the amounts incurred by Fidelity for the attorneys' fees, costs, and expenses incurred in its enforcement of the Indemnity Agreement. (ECF No. 47 at 12). Fidelity claims this amount is due and owing because the terms of the Indemnity Agreement are clear and unambiguous. The Indemnity Agreement gives Fidelity the right to settle claims on the Bonds.  Fidelity notified Indemnitors on September 3, 2020, that BCC made a claim for the full penal sum of the Performance Bond, and that unpaid subcontractors and suppliers had made claims on the payment Bond. (PSUMF, ¶ 21).   Fidelity informed Indemnitors that it was "investigating those claims and [would] pay those claims if and when appropriate."  (*Id.*) Fidelity reminded Indemnitors of their rights under Paragraph THIRTEENTH to request that Fidelity litigate claims, if Indemnitors deposited cash or collateral at that time.  (*Id.*)  Neither Blanton Construction or Indemnitors requested that Fidelity litigate any claim or deposited any cash or collateral in support of such investigation.  (*Id.*)

Fidelity provided "vouchers or other evidence" of the amounts it paid, which under the Indemnity Agreement is prima facie evidence of the Indemnitors' amount of liability to Fidelity. Fidelity seeks to recover the losses, expenses, consultant costs, and attorneys' fees it incurred investigating, defending and resolving the Performance Bond claim made by BCC and the Payment Bond claims made by the Payment Bond claimants.  The parties, however, dispute the

existence of a valid Indemnity Agreement.  For the reasons discussed herein, the Indemnitors'
arguments fail.

### A.  Corporate Indemnitors' Opposition to Fidelity's Motion for Summary Judgment

Defendants Midwest Asbestos Abatement Corporation, Blanton Holding, LLC, Coastline
Construction Service, LLC, and CenMech, LLC ("Corporate Indemnitors") oppose Fidelity's
Motion for Summary Judgment on Count I of its Complaint, asserting there was no consideration
for the Indemnity Agreement, equity precludes enforcement against the Corporate Indemnitors,
and the amount of damages is in dispute.  The Court finds that none of these reasons precludes
enforcement of the Indemnity Agreement and grants summary judgment in favor of Fidelity as to
Count I.

### 1.  Lack of Consideration

Corporate Indemnitors maintain there was "no consideration as to them when the
Indemnity Agreement was executed."  (ECF No. 66 at 8).  Corporate Indemnitors claim to have
"no record of any financial statements or other information related to any party to the Indemnity
Agreement being requested by and/or provided to [Fidelity] prior to [Fidelity's] issuance of the
Payment Bond or Performance Bond."  (ECF No. 66 at 4 (citing Defendants' Response to
Statement of Material Facts, ECF No. 65, ¶ 3)). Corporate Indemnitors admit that "the language
of the Indemnity Agreement contains a recitation of consideration, and that this constitutes prima
facie evidence of consideration."  (ECF No. 66 at 8).  However, Corporate Indemnitors claim
that "this *prima facie* evidence may be rebutted by evidence showing that there was a lack of
consideration." (*Id*.)

Further, "[Corporate Indemnitors] contest that their execution of the Indemnity Agreement in any way induced [Fidelity] to incur that detriment [by issuing the Bonds]." (*Id.*) Corporate Indemnitors argue that Fidelity did not request their financial information and relied only on the strength of Blanton Construction's financial condition. (*Id.*) Likewise, Corporate Indemnitors note that Fidelity has not inquired into the financial condition or conducted "any type of due diligence of [Corporate Indemnitors] in the decade after the Indemnity Agreement was executed." (ECF No. 66 at 10). Based upon the limited financial information available to Fidelity, Corporate Indemnitors argue "there exists a genuine issue of fact as to whether [Fidelity] established consideration for the Indemnity Agreement by showing it was induced to enter into the Indemnity Agreement or issue the Bonds by the promises of any [Corporate] Defendant to indemnify" Fidelity. (ECF No. 66 at 11).

The Court holds that the Indemnity Agreement demonstrates consideration for its execution and it is enforceable. *See Am. Ins. Co. v. Gilbert*, 319 F. Supp. 1315, 1317–18 (E.D. Mo. 1970) (citing *James W. Scudder & Co. v. Morris*, 107 Mo. App. 634, 82 S.W. 217 (S.L.C.A.1904)) (As stated in the general indemnity agreement, "[t]he execution of the four bonds in suit was sufficient consideration for the defendant Mrs. Audrey Gilbert's execution of the general indemnity agreement."). In the recitations, the Indemnitors admitted they had a "substantial, material and beneficial interest in obtaining of the Bonds . . ." and that they executed the Indemnity Agreement "in consideration of the premises of the Indemnity Agreement, including the issuance of bonds. (ECF No. 46-2). Indeed, Corporate Indemnitors "concede that [Fidelity] incurred a detriment when it issued the Payment and Performance Bonds on behalf of Blanton Construction." (ECF No. 66 at 9). The Court finds that this presents adequate evidence of consideration for the execution of the Indemnification Agreement.

Moreover, the Corporate Indemnitors' argument that they are not liable because of their unsatisfactory financial condition is not well-taken. The Corporate Indemnitors merely speculate that the Bonds were not issued in reliance of the Indemnitors' financial backing and promises. *See* ECF No. 66 at 9 ("It seems ***most probable*** that [Fidelity] issued the Bonds on behalf of Blanton Construction based on the perceived financial strength of Blanton Construction alone, and is pursuing Defendants now only because Blanton Construction declared bankruptcy.") (emphasis added). The Corporate Indemnitors' speculation does not create a factual dispute. Rather, the Court relies upon the parties' agreement and obligations in the Indemnity Agreement, with similar provisions having been "uniformly sustained and upheld." *Fid. & Deposit Co. of Maryland v. Fleischer*, 772 S.W.2d 809, 815 (Mo. Ct. App. 1989). Otherwise, the parties' agreements in Indemnity Agreements would be unreliable and become a nullity. *Id.*; *see also Am. Contractors Indem. Co. v. Leadco, LLC*, No. 4:11-CV-2126 CAS, 2014 WL 1272771, at *7 (E.D. Mo. Mar. 27, 2014) (applying California law) (Any one of the bonds issued for provided adequate consideration for the General Indemnity Agreement under California law because "[a] single consideration may support several counter-promises.").

Likewise, Corporate Indemnitors' argument that they did not receive a benefit from the issuance of the Bonds is not persuasive. Indeed, every time that bonds were issued, Corporate Indemnitors were benefitted, as provided for under the Indemnity Agreement. The Tenth Circuit found a benefit to the indemnitors in a similar case:

> The Agreement provides that the consideration for the Indemnitors' executing the Agreement (and for the payment of a premium to Developers by one of the Indemnitors) is that Developers would issue bonds. Developers did so. Each time it did so, it provided consideration that bound the Indemnitors. A party to a contract can provide consideration by suffering a detriment (such as issuing a bond); there is no requirement that the other party obtain a benefit.

*Devs. Sur. & Indem. Co. v. Barlow*, 628 F. App'x 980, 983 (10th Cir. 2015).   Moreover, if the Corporate Indemnitors had sought not to be liable as provided for in the Indemnity Agreement, then they could have utilized the termination provision provided therein.   Specifically, in Paragraph NINETEENTH of the Indemnity Agreement provides "This Agreement may be terminated by the Contractor or Indemnitors upon twenty days' written notice sent by registered mail to the Surety at its home office . . ."   *See also Barlow*, 628 F. App'x at 984 ("the Barlows argue that they are relieved of liability because Developers knew that they had severed their ties to Network before the bonds were executed and did not rely on the Barlows' financial condition in deciding to execute them. This argument is foreclosed by the Agreement, which provides a specific procedure for the Indemnitors to escape future liability—written notice.").[5] Based upon the foregoing, the Court holds that adequate consideration supported the Indemnity Agreement and it is enforceable.

### 2.  Parol Evidence

Corporate Indemnitors complain that Fidelity has refused to provide any information about what underwriting or due diligence it conducted with respect to the Indemnity Agreement or the issuance of the Payment and Performance Bonds, despite requests for such information. (ECF No. 66 at 10).   Thus, Corporate Indemnitors claim there is a genuine issue of fact "as to

---

[5] In contrast, Corporate Indemnitors rely *on United Excavating Co., Inc. v. Hartford Accident & Indem. Co.*, No. 78 CA 19, 1978 WL 215029  (Ohio Ct. App. July 6, 1978).  *See* ECF No. 66 at 10.  In *United Excavating*, however, the appellate court affirmed the trial court's determination that "the indemnity agreement in question was effective only for a reasonable period of time, and that such period had expired by the time that appellant executed a contract bond with the William D. Davis Co. in 1972, nearly five years later."  *Id*. at *3.   Unlike in the instant case, the indemnity agreement in *United Excavating* did not include a termination provision, nor was there any mention of consideration.  Thus, the Court holds that *United Excavating* is not persuasive for the Corporate Indemnitors.

whether [Fidelity] established consideration for the Indemnity Agreement by showing that it was induced to enter into the Indemnity Agreement or issue Bonds by the promises of any Defendant to indemnify" Fidelity.   (ECF No. 66 at 11 (citing *United Excavating Co., Inc. v. Hartford Accident & Indem. Co.*, No. 78 CA 19, 1978 WL 215029, *3  (Ohio Ct. App. July 6, 1978)).

Where a contract states the consideration, a party is precluded from challenging the consideration in the contract by extrinsic evidence under the parol evidence rule.   "[I]f the statement in a written contract in relation to the consideration shows upon its face that the expressed consideration is a part of the terms of the contract itself, then that part of the writing stands as any other part, and it cannot be contradicted, added to, nor subtracted from, by parol." *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 461 (8th Cir. 2002) (citing *Roberts v. Browning,* 610 F.2d 528, 535–36 (8th Cir. 1979) (citing *Fox Midwest Theatres, Inc. v. Means,* 221 F.2d 173, 177 (8th Cir. 1955)(quoting *Pile v. Bright,* 156 Mo. App. 301, 137 S.W. 1017, 1018 (1911)).   Missouri courts have refused to apply the exception to the parol evidence rule where the recited consideration was "a promise of future, ongoing payment in exchange for" services. *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 461–62 (8th Cir. 2002) (citing *Meyer v. Weber,* 109 S.W.2d 702, 704-05 (1937).   The Court held "[s]uch a recitation of consideration was a contract term rather than a mere recitation." *Id.* Conversely, parol evidence is admissible "to rebut recitations of consideration if the recitation is a 'mere recitation' of fact, such as the acknowledgment of payment received, and is not a part of the terms of the contract itself." *Stone Motor Co.*, 293 F.3d at 461; *see also CIT Grp./Sales Fin. Inc. v. Lark*, 906 S.W.2d 865, 869 (Mo. Ct. App. 1995) (citing *Meyer v. Weber,* 233 Mo. App. 832, 109 S.W.2d 702, 705 (1937)) (Parol evidence rule "exception applies only to contracts in which the named consideration is a mere recital of a fact of something done, such as the acknowledgment of the

receipt of payment.").   "To permit a party when sued on a written contract to admit that he signed it but to deny that it expresses the agreement he made, or to allow him to admit that he signed it but did not read it or know its stipulations, would absolutely destroy the value of all contracts and negotiable instruments." *J.W. Jenkins Sons Music Co. v. Johnson,* 175 Mo. App. 355, 162 S.W. 308, 309 (1914); *Woods of Somerset, LLC v. Devs. Sur. & Indem. Co.*, 422 S.W.3d 330, 336 (Mo. Ct. App. 2013)*.* "The reason underlying the rule is to give stability to written agreements and to remove the temptation and possibility of perjury, which would be afforded if parol evidence was admissible." *Id.*

The Court holds that the consideration in the Indemnity Agreement is a contract term, not a recital of fact or acknowledgement of payment received.   Therefore, the Court could not receive parol evidence to contradict it.   That is, the first page of the Indemnity Agreement provides:

WHEREAS, the Contractor, in the performance of contracts and the fulfillment of obligations generally, whether in its own name solely or in joint venture with others, may desire or be required to give or procure certain surety bonds, undertakings or instruments of guarantee, and to renew, or continue or substitute from time to time the same or new bonds, undertakings or instruments of guarantee with the same or different penalties, and/or conditions, any one or more of which are hereinafter called Bonds; or the Contractor or Indemnitors may request the Surety to refrain from cancelling said Bonds; and

WHEREAS, at the request of the Contractor and the Indemnitors and upon the express understanding that this Agreement of Indemnity be given, the Surety has executed or procured to

be executed, and may from time to time hereafter execute or procure to be executed, said Bonds on behalf of the Contractor;

WHEREAS, the Indemnitors have a substantial, material and beneficial interest in the obtaining of the Bonds or in the Surety's refraining from cancelling said Bonds.

Now, THEREFORE, in consideration of the premises the Contractor and Indemnitors for themselves, their heirs, executors, administrators successors and assigns, jointly and severally, hereby covenant and agree with the Surety, as follows: …

(ECF No. 46-2).

As stated herein, the Indemnity Agreement contemplates an ongoing obligation to issue Bonds.  In consideration of Fidelity's issuance of the Bonds, the Indemnitors agreed to be bound by the terms of the Indemnity Agreement, including indemnifying Fidelity for losses resulting from the Bonds.  This stated consideration is an ongoing obligation, dissimilar to a mere recital such as "one dollar and other good and valuable consideration[.]" *Stone Motor Co.*, 293 F.3d at 462 (allowing admission of parol evidence to test the veracity of the recitation). Finding the stated consideration sufficient, the Court finds no basis for the admittance of parol evidence and that the Indemnity Agreement is enforceable as contemplated by the parties.

### 3.  Equity

Corporate Indemnitors further contest that the Indemnity Agreement is enforceable against them because there was "never any benefit to Blanton Holding, Coastline, and CenMech[.]" (ECF No. 66 at 11).   Corporate Indemnitors also state there was no consideration, making it inequitable to enforce the Indemnity Agreement against them. (*Id*.)   In addition,

Corporate Indemnitors claim that the Bonds were significantly larger than any prior bond and the Bonds were issued nearly a decade after the Indemnity Agreement was executed.

The Court will not void the Indemnity Agreement based upon Corporate Indemnitors' equity defense.  As an initial matter, the Court notes that Corporate Indemnitors did not plead equity as a defense as required under Fed. R. Civ. P. 8.  "Affirmative defenses are subject to the general rule that a pleading must contain a 'short and plain statement' of the basis of the defense." *Cynergy Ergonomics, Inc. v. Ergonomic Partners, Inc.*, 2008 WL 2817106, at *3 (E.D. Mo. July 21, 2008) (quoting Fed. R. Civ. P. 8(a)). This "put[s] opposing parties on notice of affirmative defenses and afford[s] them the opportunity to respond." *Id.* (quoting *Buttice v. G.D. Searle & Co.*, 938 F. Supp. 561, 656 (E.D. Mo. 1996)); *A.M. by & through Deora v. Bridgecrest Acceptance Corp.,* No. 4:20-CV-00553-SEP, 2021 WL 3784887, at *1 (E.D. Mo. Aug. 26, 2021). "Normally, a failure to raise an affirmative defense, such as expiration of the limitations period, in a responsive pleading results in a waiver of that defense." *Carland, Inc. v. United States*, No. 84-0195-CV-W-0-1, 1988 WL 68047, at *5 (W.D. Mo. Jan. 29, 1988) (citing *Wycoff v. Menke,* 773 F.2d 983, 984 (8th Cir.1985); *Myers v. John Deere Ltd.,* 683 F.2d 270, 272–273 (8th Cir.1982)). The Court, however, does not decide whether Corporate Indemnitors waived the equity defense because they have not complied with their obligations under the Indemnity Agreement.

Even if it considered this argument, the Court holds that equity would not allow the parties to forgo the enforcement of the valid Indemnity Agreement.  "[E]quitable relief cannot be granted where the rights of the parties are governed by a valid contract." *Moore v. Medtronic, Inc.*, No. CIV. 99-2066ADMAJB, 2001 WL 1636248, at *3 (D. Minn. July 30, 2001) (quoting *U.S. Fire Ins. Co. v. Minn. St. Zoological Bd.,* 307 N.W.2d 490, 497 (Minn.1981)). Thus, the

Court denies summary judgment to the Corporate Indemnitors based upon their argument that the Indemnity Agreement was inequitable.  *See J. J. Newberry Co. v. Mixon*, 440 F. Supp. 20, 22 (E.D. Mo. 1977)("The Court will not set aside an otherwise valid lease simply because one party no longer finds the arrangement as profitable as it first anticipated.").

### 4.  Amount of Damages

Finally, Corporate Indemnitors argue that summary judgment should be denied because a material fact exists as to the amount of damages Fidelity is entitled to receive.  (ECF No. 66 at 12).  Corporate Indemnitors argue that any distributions Fidelity receives under the Plan confirmed in Blanton Construction's bankruptcy case should be deducted from any recovery in this action.  Similarly, Corporate Indemnitors claim that any recovery received by Blanton Construction in its action against Travelers Property Casualty Company of America could also produce another distribution under the bankruptcy Plan.  (ECF No. 66 at 12 (citing *Ben F. Blanton Construction v. Travelers Property Casualty Company of America*, 4:20-cv-1141 (E.D. Mo.)[6]

"Under Missouri law, a plaintiff is entitled to only one satisfaction of the same wrong." *Moore Auto. Grp., Inc. v. Lewis*, 362 S.W.3d 462, 468 (Mo. Ct. App. 2012) (citing *Echols v. City of Riverside,* 332 S.W.3d 207, 212 (Mo. Ct. App. 2010); *Walihan v. St. Louis–Clayton Orthopedic Group, Inc.,* 849 S.W.2d 177, 180 (Mo. Ct. App. 1993)); *Biben v. Card*, No. 84-0844-CV-W-6, 1991 WL 272848, at *4 (W.D. Mo. Dec. 10, 1991) (Under the "one satisfaction rule," a plaintiff is entitled to one satisfaction for each injury.).  "[A] party may not recover from all sources an amount in excess of the damages sustained, or be put in a better condition than he

---

[6] The Court refers to these two actions collectively as the "Bankruptcy Litigations".

would have been had the wrong not been committed." *Ozark Air Lines, Inc. v. Valley Oil Co., LLC,* 239 S.W.3d 140, 147 (Mo. Ct. App. 2007) (internal quotation omitted); *see also* 47 Am.Jur.2d Judgments § 809 (2006) ("a plaintiff may pursue separate judgments against defendants that are jointly and severally liable for the full amount of plaintiff's damages, but, under the 'one satisfaction' rule, may recover only one satisfaction for the losses."). "While entitled to be made whole by one compensatory damage award, a party may not receive the windfall of a double recovery, which is a species of unjust enrichment and is governed by the same principles of preventive justice." *Echols v. City of Riverside*, 332 S.W.3d 207, 212 (Mo. Ct. App. 2010) (citing *R.J.S. Sec., Inc. v. Command Sec. Services, Inc.,* 101 S.W.3d 1, 17 (Mo. Ct. App. 2003) (citing *Inauen Packaging Equip. Corp. v. Integrated Indus. Serv.,* 970 S.W.2d 360, 368 (Mo. Ct. App. 1998)).

The Court holds that a factual dispute as to the amount of possible setoff from Fidelity's recovery in the Bankruptcy Litigations is not a basis for denying summary judgment in this case. No parties argue that Fidelity has received a recovery through the Bankruptcy Litigations or other means, allowing no amount to be credited to Fidelity. Any other recovery by Fidelity is speculation at this point. Nothing currently precludes entry of summary judgment in favor of Fidelity.  If Fidelity later recovers pursuant to the Bankruptcy Litigations, then an amended judgment or partial satisfaction of judgment could be entered.

In consideration of the foregoing, the Court hold that none of the Corporate Indemnitors' defenses preclude enforcement of the Indemnity Agreement and the Court enters summary judgment in favor of Fidelity and against the Corporate Indemnitors as to Count I of the Complaint.

### B.  Blantons' Opposition to Fidelity's Motion for Summary Judgment

#### 1.  Personal Liability

Jeff Blanton and Judy Blanton ("the Blantons") argue that the language of the "Indemnity" clause of the Indemnity Agreement is ambiguous as to any personal liability against the Blantons.  The Indemnity Agreement named five different companies, "each of which Jeff Blanton and/or Jody Blanton previously had some relationship or role with."  (ECF No. 69 at 4). Jeff Blanton signed the Indemnity Agreement several times on behalf of various corporations. The Blantons, however, argue that the "Indemnity" clause "makes no mention of any personal liability on behalf of either of the Blantons as differentiated from the various companies on whose behalf one or more of the Blantons signed for."  (ECF No. 68 at 4).  The Blantons argue that the plain language of the "Indemnity" clause of the Agreement is ambiguous as to the scope or extent of their personal liability.  (*Id*.)   Indeed, they claim the Indemnity clause does not contain any "clear and explicit intent" for the Blantons to assume a personal guaranty contract. (*Id*.)  Due to its ambiguous language, the Blantons argue that an issue of fact exist that precludes summary judgment as to their personal liability under the Indemnity Agreement.

The Court holds that the Indemnity Agreement is unambiguous as to the Blantons' assumption of personal liability.  Jeff and Jody Blanton executed the Indemnity Agreement as individuals: "Jeff Blanton/Individually" and "Jody L. Blanton/Individually" and notarized under an "INDIVIDUAL ACKNOWLEDGEMENT" notary block.  Jeff Blanton further executed the Indemnity Agreement in a corporate capacity on behalf of Midwest  Asbestos as a member of Coastline and CenMech. Jeff Blanton's execution of the Indemnity Agreement as a corporate representative and individually was proper for him to be liable in both a corporate and individual capacity under Missouri law.  *See Wired Music, Inc. of the Great Midwest v. Great River*

*Steamboat Co.*, 554 S.W.2d 466, 470–71 (Mo. App. 1977) ("in order to hold a corporate officer individually liable in signing a contract of guaranty, as in this case, the officer should sign the contract twice once in his corporate capacity and once in his individual capacity"); *Capitol Grp., Inc. v. Collier*, 365 S.W.3d 644, 648 (Mo. Ct. App. 2012) (citing *Wired Music*, 554 S.W.2d at 470–71)("By signing the contract twice, the officer executing the contract for his corporation clearly manifests his intent to assume personal liability."); *Lafarge N. Am., Inc. v. Miller*, 375 S.W.3d 852, 855 (Mo. Ct. App. 2012) ("While our caselaw does not hold that the only way an agent can be liable under a guaranty of this nature is by signing twice, this is the preferred method because it 'clearly manifests his intent to assume personal liability.'"); *State ex rel. Wills v. DePriest*, 486 S.W.3d 459, 462 (Mo. Ct. App. 2016) (citing *Collier*, 365 S.W. 3d at 648) ("[A]n agent will not be bound personally except upon *clear and explicit evidence* of an intention to be bound."; finding no clear intent to bind Relators in their personal capacity when the form contained only one signature block).  Therefore, the Court holds that the Indemnity Agreement clearly and unambiguously bound the Blantons in their personal capacities.

### 2.  Unconscionability

The Blantons maintain that "[f]rom the plain language of the contract, the Agreement, as applied to the Blantons, is grossly substantively unconscionable."  (ECF No. 68 at 6).  The Blantons note the Indemnity Agreement purports to allow Fidelity to collect against the Blantons, as individual defendants, "virtually any amount [Fidelity] claims as payments made to third-party companies or any nonspecific costs it claims it incurred 'in enforcing' the agreement."  (ECF No. 68 at 6).  Further, the Indemnity Agreement allows Fidelity to charge Blantons for any disbursements made "in good faith" under a "belief" that it was liable, even though such "belief" is self-validating as Fidelity's payments made with this "belief" are deemed

to be prima facie evidence of such "belief." (*Id.*) The Blantons contend that Fidelity's "nearly limitless monetary provision" in the Indemnity Agreement is "so unduly harsh and one-sided" that it must be deemed "unconscionable." (ECF No. 68 at 6-7).

The Blantons likewise argue that the Indemnity Agreement was procedurally unconscionable because it was "executed as a requirement of [Fidelity] extending surety credit to Blanton Construction—a third party corporate entity not named as a defendant in this case." (ECF No. 68 at 7). The Blantons maintain that Fidelity, as surety, was in a "vastly superior bargaining position" and, as a result, the Indemnity Agreement was procedural unconscionable under Missouri law.

As an initial matter, the Court holds that the Blantons waived the defense of unconscionability by failing to raise it in their answer or responsive pleading. *See Kohlbeck v. Wyndham Vacation Resorts, Inc.*, 7 F.4th 729, 737 (8th Cir. 2021)(quoting *Friedman & Friedman, Ltd. v. Tim McCandless, Inc.*, 606 F.3d 494, 498 (8th Cir. 2010) ("they did not raise unconscionability in their responsive pleadings, and 'an affirmative defense not raised in the defendant's responsive pleadings is generally forfeited'"); *CitiMortgage, Inc. v. Just Mortg., Inc.*, No. 4:09 CV 1909 DDN, 2012 WL 1060122, at *16 (E.D. Mo. Mar. 29, 2012) ("Just Mortgage did not plead unconscionability as an affirmative defense in its answer. … Thus, Just Mortgage has waived this defense."); Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense"). Thus, the Blantons' unconscionability defense fails because it was waived.

Even if they had not waived their unconscionability defense, the Court holds that the Blantons' defense that the Indemnity was unconscionable still fails as a matter of law. "Missouri courts have adopted the doctrine of unconscionability 'to guard against one-sided contracts,

oppression, and unfair surprise.'" *CitiMortgage, Inc,* 2012 WL 1060122, at \*16 (quoting *Cowbell, LLC v. Borc Bldg. & Leasing Corp.,* 328 S.W.3d 399, 405 (Mo. Ct. App. 2010)). "Under Missouri law, the procedural and substantive aspects of the contract 'considered together' determine conscionability." *Leonard v. Delaware N. Companies Sport Serv., Inc.*, 861 F.3d 727, 729 (8th Cir. 2017) (quoting *Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 433 (Mo. banc 2015)). "Procedural unconscionability involves the contract formation process; substantive unconscionability refers to undue harshness in the terms of the contract." *Id.* (citing *Pleasants v. Am. Exp. Co.*, 541 F.3d 853, 857-58 (8th Cir. 2008)); *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968–69 (8th Cir. 2015) (citing *Brewer v. Missouri Title Loans,* 364 S.W.3d 486, 492 n. 3 (Mo. 2012)) (Missouri courts have traditionally viewed unconscionability in the context of procedural unconscionability, *i.e.,* the formalities of making the contract, and substantive unconscionability, *i.e.,* the terms set forth in the contract.). Unconscionability is "an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it." *Eaton*, 461 S.W.3d at 432 (internal quotation marks omitted).

The Court holds that the Blantons have not demonstrated procedural unconscionability based upon the circumstances of the execution of the Indemnity Agreement. Although they argue that Fidelity was in a "vastly superior bargaining position," the Blantons provide no evidence to support this statement. *See, e.g., Cicle v. Chase Bank USA*, 583 F.3d 549, 555 (8th Cir. 2009) ("there is no evidence that Chase engaged in 'high-pressure sales tactics to coerce' Cicle into entering into the Cardmember Agreement"). The Blantons did not argue that the Indemnity Agreement was unconscionable when it was formed or when Fidelity was issuing bonds for Blanton Construction and Midwest Asbestos. Rather, the Blantons only argued that

the Indemnity Agreement was unconscionable once they had to respond to Fidelity's summary judgment motion and face fulfillment of their obligations. *See CitiMortgage, Inc*., 2012 WL 1060122, at *16 ("That Just Mortgage was ultimately required to repurchase the Group 1 Loans does not make the Agreement unconscionable."); *Kleinheider v. Phillips Pipe Line Co.,* 528 F.2d 837, 842 (8th Cir.1975) (a court will not set aside a contract simply because, in hindsight, it has become a bad bargain).

Likewise, the Blantons provide no evidence that the agreement was substantively unconscionable. The Blantons do not deny that the "contract was negotiated at arms length and in good faith." *J. J. Newberry Co. v. Mixon*, 440 F. Supp. 20, 22 (E.D. Mo. 1977) (lease provision requiring the lessee to remain open for the full term of the lease was not unconscionable). Rather, they claim that the Indemnity Agreement is substantively unconscionable because Fidelity has the ability to settle claims solely based upon its own belief that there is liability. Contract provisions such as this, however, "have been uniformly sustained and upheld." *Fid. & Deposit Co. of Maryland v. Fleischer*, 772 S.W.2d 809, 815 (Mo. Ct. App. 1989) (holding that a contract provision that surety was entitled to reimbursement "for any and all disbursements made by it in good faith ... under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, *whether or not such liability, necessity or expediency existed*" was not unconscionable). "Such provisions, while strict, are common in indemnity contracts executed by contractors and others to induce the execution of bonds by compensated sureties." *Id*. (citing *Fidelity and Deposit Co. of Maryland v. Bristol Steel & Iron Works, Inc.,* 722 F.2d 1160, 1163 (4th Cir.1983); *Maryland Casualty Co. v. Spitcaufsky,* 352 Mo. 547, 178 S.W.2d 368, 371 (1944)).

Further, the Court holds that the Blantons' liability is not "limitless" as they claim.  For expenses to be paid, Fidelity must incur them in good faith.  The Blantons have not stated that Fidelity incurred any expenses in bad faith.  Nor have the Blantons utilized the procedure in Paragraph THIRTEENTH of the Indemnity Agreement to post collateral and request that Fidelity litigate any claim. (PSUMF, ¶ 5). For these reasons, the Court holds that the Indemnity Agreement is not substantively unconscionable.

Thus rejecting the Blantons' arguments, the Court grants Fidelity's Motion for Summary Judgment as to Count I.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Fidelity and Deposit Company of Maryland's Motion for Summary Judgment on Count I of its Complaint (ECF No. 45)  is **GRANTED**.  The Court awards damages in favor of Fidelity and against all Defendants, jointly and severally, in the amount of $25,708,623.39, plus pre-judgment interest from the date of each payment.

**IT IS FURTHER ORDERED** that Defendants' Joint Motion to Continue Trial Date (ECF No. 76) is **DENIED**.

**IT IS FINALLY ORDERED** that the Court will hold a telephone status conference on **Friday, April 28, 2023, at 10:30 a.m.**  Counsel participating in the telephone conference are directed to call the conference toll free at **1-877-810-9415**. The access code to enter the telephone conference for all participants is: **7519116**.

Dated this 26th day of April, 2023.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**